# PUTNAM *v.* WETMORE.

PATENTS; INTERFERENCE; PATENTABILITY; REDUCTION TO PRACTICE.

1. The question of the patentability of the issue will not be determined in an interference case. (Following *Hisey* v. *Peters*, 6 App. D. C. 68; *Oliver* v. *Felbel*, 20 App. D. C. 255; *Johnson* v. *Mueser*, 29 App. D. C. 61; and *Sobey* v. *Holsclaw*, 28 App. D. C. 65.)

2. The reduction to practice, of an invention of an improvement in adding machines, is shown by evidence that the inventors, immediately upon the conception of the invention, made by hand a full-sized machine embodying all the features of the invention, which, after being tested and found to work satisfactorily, was used as a pattern for the construction of a tool-made machine, which was used temporarily by customers while others were being manufactured for sale to the trade. (Distinguishing *Robinson* v. *Thresher*, 28 App. D. C. 22; *Daggett* v. *Kaufmann*, 33 App. D. C. 450.)

No. 771. Patent Appeals. Submitted May 15, 1912. Decided May 30, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Frank Parker Davis* for the appellant.

*Mr. Henry Love Clarke* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding involving the invention of an improvement in adding machines. The character of the invention is thus stated by the Examiner of Interferences:

"The object which it is sought to attain by the invention is the provision of a machine which may be "split" at any desired

point by the person operating the same. In adding machines as they are ordinarily constructed there are keys corresponding only to the digits of the numbers to be recorded. If there is no digit in a particular place in a number to be entered, no key is struck, but the machine automatically prints a cipher in the place which would otherwise be vacant. It seems, therefore, that if only the first figure in a number is a digit, the machine must automatically print ciphers in the other places to the right. This is accomplished ordinarily by a chain of co-operating elements, each of which actuates its successor.

"If it is desired to have the machine print two parallel columns of figures, the chain of elements must clearly be broken at some specified point. This is termed "splitting" the machine, and heretofore it has been possible to do this only at one point, previously determined by the maker. The present invention seeks to provide a machine which may be selectively split by the operator from the keyboard at any desired point."

The issue of the interference is contained in three counts as follows:

"1. In a machine of the character described, the combination of a series of impression means co-operatively related for the printing of ciphers to right of numerals in decimal places where the amount to be recorded has no units, with provisions for discontinuing the co-operative relationship between adjacent members of the series of impression means, and manipulative means controlling said co-operative relationship, and adjustable to effect discontinuance thereof between one or another pair of adjacent members of the series of impression means.

"2. In a machine of the character described, the combination of a series of separately acting impression devices; movable couplers between the members of said series for securing co-operative action between the same in the printing of ciphers; and means for selectively displacing said couplers.

"3. In a multiple-order adding machine, in combination, adding and printing mechanisms, automatic cipher printing mechanism, and optionally operable means whereby the auto-

matic cipher transfer to the right of either of a plurality of orders may be prevented."

Putnam filed his application December 14, 1906, and alleges conception in December, 1905, disclosure to others about December 16, 1905 and a reduction to practice February 6, 1906.

Wetmore and Nieman filed their joint application April 24, 1907, and allege conception and disclosure in April, 1905, reduction to practice in July, 1905. As junior parties the burden of proof was cast upon them.

Putnam moved to dissolve the interference on the ground that the issue was not patentable because of the state of the prior art as shown by the application of one Peters, with whom Putnam had previously been in interference. The motion was denied by the Primary Examiner, and the Commissioner refused a rehearing thereof.

Upon the testimony taken, the Examiner of Interferences decided priority in favor of Wetmore and Nieman. On appeal to the Examiners in Chief they were requested by Putnam to recommend to the commissioner that the issue was not patentable. This they refused to do, and affirmed the decision of the Examiner of Interferences. Putnam on appeal therefrom raised the question of patentability before the Commissioner, who declined to hold that it was not patentable, and affirmed the award of priority to Wetmore and Nieman. From this final decision Putnam has appealed.

The appellant again presents the question of the patentability of the issue. We must decline to consider this question in an interference case. It is well settled that "in interference cases we do not determine whether either party shall receive a patent. The question presented to us is, conceding there is a patentable invention, which party was the first to invent or discover the same." *Sobey* v. *Holsclaw,* 28 App. D. C. 65–82; *Hisey* v. *Peters,* 6 App. D. C. 68–71; *Johnson* v. *Mueser,* 29 App. D. C. 61–64; and cases there cited. See also *Oliver* v. *Felbel,* 20 App. D. C. 255–258.

The tribunals of the Patent Office successively decided that Wetmore and Nieman conceived the invention in the summer

of 1905, several months before the earliest date claimed by Putnam; and there can be no doubt that the evidence fully sustains the conclusion. Nor does the appellant now controvert the fact. They also concurred in holding that Wetmore and Nieman reduced the invention to practice early in December, 1905. The appellant contends that the evidence is insufficient to establish this fact. Aside from the weight to be accorded the concurring decisions of the Patent Office tribunals, we are satisfied from an examination of the evidence that they were right.

The well-corroborated testimony of the inventors, who were employees of the Comptograph Company, shows that immediately upon the conception of the invention, in July, 1905, a machine embodying all the features of the invention was made by hand, tested, and found to work satisfactorily. This was a full-sized machine. It is called a model in the testimony, not because it was in fact a model, such as is frequent in illustrating an invention, but because it was intended to be followed in the construction of tool-made machines for sale to the trade. It was complete in itself, and required no alteration or improvement. Having been adopted for manufacture, many screws, taps, etc., to be used in manufacture, were ordered and received from others engaged in such manufacture. Complete sets of tools were made and other necessary parts manufactured in the Comptograph shops. The first tool-made machine, a copy of the hand-made model, was tested in all of its parts. It was also taken around to different customers, and used temporarily by them. The Comptograph Company proceeded to manufacture others, and has continued to make them and sell them to the trade. The objection to the testimony is that it does not show in detail the several acts of test which demonstrated success, and no samples of the work done on it were preserved. It is true that the evidence might have been more specific. In some cases it has been held essential. *Robinson* v. *Thresher,* 28 App. D. C. 22; *Daggett* v. *Kaufmann,* 33 App. D. C. 450, and others cited by the appellant. But there were special conditions and circumstances in those cases that called for the specific facts and made them necessary.

None of those are found in this case. The hand-made model was preserved and was produced in taking the testimony. The first tool-made machine for commercial use was procured, and likewise produced. They were in the same condition as when originally completed. Both were operated in the presence of the counsel for Putnam and others while the witnesses were being examined, and found to act with perfect satisfaction. The Comptograph Company had, in the meantime, been manufacturing the same machines and selling them to the trade. We agree with the Commissioner that the evidence of reduction to practice in December, 1905, was amply sufficient to sustain the burden of proof. As Wetmore and Nieman were the first to conceive the invention, and with due diligence reduced it to practice, they were entitled to the award of priority.

The decision will be affirmed, and this decision is ordered to be certified to the Commissioner of Patents.

*Affirmed.*